**1622-CC01236**

Electronically Filed - City of St. Louis - May 06, 2016 - 04:16 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| ANGELA NOVY, FREDERICK BECKER, LARRY COLLINS, WILSON PALMER, JUANITA WILLIAMS, SARAH BESTE, HEATHER POWERS, LAURA CROWLEY, TERRY ELWELL, ANGELA PETROUTSA, JOSEPH GROSSMAN, JAMES MAXFIELD, ABDUL-MUTAAL BILAL, LISA RADZIK, ALLAN KOTTER, DENISE GILL, FAITH HINCHMAN, MICHELLE BAGGETT, ANGELA GIBSON, DIANE REYNOLDSON, JOANN CARDONA, JASON SMITH, TAMMY DYKEMA, TONY WALKER, SHEILA MAY, BRIAN MORRISON, MELVIN HOLMES III, ERIC ROBINSON, CHRSTINE BAKER, SUSAN COLE, SANDRA GRAHAM, CYNTHIA HOUSTON, TINA KENNEDY, PETER McGRATH, SABIR SAAD, RONELL SMITH, WILFRED VEGIARD, JEROME WEISS, ALANA ADAMS, HELEN ARTIST-ROGERS, WILLIAM BROWN, SR., JESSICA LCARROLL, SUETTE COLLINS, JAMES NICOL, VANESSA MARSHALL, WILLIAM SALTERS, JERRY SIMERLY, and ANNIE THOMAS, | Cause No: <br><br> Division: <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs,

v.

C.R. BARD, INC.,
Serve: CT Corporation System
      3800 N. Central Ave., Suite 460
      Phoenix, AZ 85012

and

BARD PERIPHERAL VASCULAR, INC.
Serve: CT Corporation System
      3800 N. Central Ave., Suite 460
      Phoenix, AZ 85012

Defendants.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:16 PM

## PETITION

COME NOW Plaintiffs, by and through their undersigned counsel, allege against Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC. (collectively, "Bard" or "Defendants"), on information and belief, as follows:

## INTRODUCTION

1. Plaintiffs jointly bring this cause of action against Defendants pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure as their claims arise out of the same series of transactions and occurrences, and their claims involve common questions of law and fact.

2. Plaintiffs bring this action for personal injuries damages suffered as a direct and proximate result of being implanted with a defective and unreasonably dangerous Inferior Vena Cava ("IVC") filter medical device manufactured by Bard.

3. The subject IVC filters are part of Bard's IVC "retrievable" filter product line and include the following devices: Recovery®, G2®, G2®X (G2 Express®), Eclipse®, Meridian® and Denali® (for convenience, these devices will be referred to in this complaint under the generic term "Bard IVC Filters"). The term "Bard IVC Filters" also includes Bard's Recovery® Cone Removal System®.

4. All claims in this action relate to tortious wrongful conduct by Defendants in the research, designing, testing, formulating, inspecting, labeling, manufacturing, packaging, marketing, distributing, producing, processing, promoting and selling of Bard IVC Filters as set forth in further detail below.

5. All Plaintiffs in this action seek recovery for damages sustained in the form of personal injuries that were directly and proximately caused by such tortiously wrongful conduct by Defendants, the unreasonably dangerous and defective nature of Bard IVC Filters and the

2

Electronically Filed – City of St. Louis – May 06, 2016 – 04:45 PM

attendant effects of Plaintiffs' personal injuries. Each of the personal injuries at issue in this action, and all of the claims, in this action involve common legal and medical issues.

## PARTIES

6. Plaintiff Angela Novy is a citizen of the State of Missouri. On or about October 2, 2006, Plaintiff Angela Novy had a Bard IVC filter implanted in the City of St. Louis, State of Missouri, at Barnes Hospital, pursuant to a doctor's order. On or around April 18, 2007, Plaintiff Angela Novy suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Angela Novy suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Angela Novy has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Angela Novy has otherwise been damaged in a personal and pecuniary nature.

7. Plaintiff Frederick Becker is a citizen of the State of Iowa. On or about September 28, 2012, Plaintiff Frederick Becker had a Bard IVC filter implanted in the State of Iowa, pursuant to a doctor's order. In or around 2013, Plaintiff Frederick Becker suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Frederick Becker suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Frederick Becker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Frederick Becker has otherwise been damaged in a personal and pecuniary nature.

8.    Plaintiff Larry Collins is a citizen of the State of Ohio. On or about January 12, 2012, Plaintiff Larry Collins had a Bard IVC filter implanted in the State of Ohio, pursuant to a doctor's order. In or around June 2015, Plaintiff Larry Collins suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Larry Collins suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Larry Collins has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Larry Collins has otherwise been damaged in a personal and pecuniary nature.

9.    Plaintiff Wilson Palmer is a citizen of the State of Mississippi. On or about March 30, 2012, Plaintiff Wilson Palmer had a Bard IVC filter implanted in the State of Mississippi, pursuant to a doctor's order. In or around October 2012, Plaintiff Wilson Palmer suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC

4

Electronically Filed - City of St. Louis - May 06, 2016 - 04:16 PM

filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Wilson Palmer suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Wilson Palmer has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Wilson Palmer has otherwise been damaged in a personal and pecuniary nature.

10.    Plaintiff Juanita Williams is a citizen of the State of Florida. On or about October 7, 2010, Plaintiff Juanita Williams had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order. On or around May 18, 2011, Plaintiff Juanita Williams suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Juanita Williams suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Juanita Williams has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Juanita Williams has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

11.    Plaintiff Sarah Beste is a citizen of the State of Washington. On or about April 11, 2006, Plaintiff Sarah Beste had a Bard IVC filter implanted in the State of Virginia, pursuant to a doctor's order. On or around March 30, 2016, Plaintiff Sarah Beste suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Sarah Beste suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Sarah Beste has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sarah Beste has otherwise been damaged in a personal and pecuniary nature.

12.    Plaintiff Heather Powers is a citizen of the State of Arizona. On or about November 26, 2008, Plaintiff Heather Powers had a Bard IVC filter implanted in the State of Arizona, pursuant to a doctor's order. On or around June 23, 2015, Plaintiff Heather Powers suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Heather Powers suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Heather Powers has incurred and

6

Electronically Filed - City of St. Louis - May 09, 2016 - 04:15 PM

will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Heather Powers has otherwise been damaged in a personal and pecuniary nature.

13.    Plaintiff Laura Crowley is a citizen of the State of California.  On or about September 9, 2005, Plaintiff Laura Crowley had a Bard IVC filter implanted in the State of California, pursuant to a doctor's order.  In or around 2014, Plaintiff Laura Crowley suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Laura Crowley suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter.  As a direct and proximate result of these injuries, Plaintiff Laura Crowley has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Laura Crowley has otherwise been damaged in a personal and pecuniary nature.

14.    Plaintiff Terry Elwell is a citizen of the State of Washington.  On or about July 8, 2004, Plaintiff Terry Elwell had a Bard IVC filter implanted in the State of Washington, pursuant to a doctor's order.  In or around October 2015, Plaintiff Terry Elwell suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Terry Elwell suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC

Electronically Filed - City of St. Louis - May 09, 2016 - 04:45 PM

filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Terry Elwell has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Terry Elwell has otherwise been damaged in a personal and pecuniary nature.

15.    Plaintiff Angela Petroutsa is a citizen of the State of Virginia. On or about February 20, 2006, Plaintiff Angela Petroutsa had a Bard IVC filter implanted in the State of Virginia, pursuant to a doctor's order. On or around December 8, 2006, Plaintiff Angela Petroutsa suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Angela Petroutsa suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Angela Petroutsa has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Angela Petroutsa has otherwise been damaged in a personal and pecuniary nature.

16.    Plaintiff Joseph Grossman is a citizen of the State of Arizona. On or about August 5, 2012, Plaintiff Joseph Grossman had a Bard IVC filter implanted in the State of Arizona, pursuant to a doctor's order. On or around January 24, 2013, Plaintiff Joseph Grossman suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC

8

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Joseph Grossman suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Joseph Grossman has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Joseph Grossman has otherwise been damaged in a personal and pecuniary nature.

17.   Plaintiff James Maxfield is a citizen of the State of Arizona. On or about August 15, 2014, Plaintiff James Maxfield had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order. On or around September 1, 2014, Plaintiff James Maxfield suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff James Maxfield suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff James Maxfield has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff James Maxfield has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

18. Plaintiff Abdul-Mutaal Bilal is a citizen of the State of Delaware. On or about January 8, 2010, Plaintiff Abdul-Mutaal Bilal had a Bard IVC filter implanted in the State of Pennsylvania, pursuant to a doctor's order. On or around August 17, 2012, Plaintiff Abdul-Mutaal Bilal suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Abdul-Mutaal Bilal suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Abdul-Mutaal Bilal has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Abdul-Mutaal Bilal has otherwise been damaged in a personal and pecuniary nature.

19. Plaintiff Lisa Radzik is a citizen of the State of New Jersey. On or about October 29, 2008, Plaintiff Lisa Radzik had a Bard IVC filter implanted in the State of New Jersey, pursuant to a doctor's order. On or around December 12, 2008, Plaintiff Lisa Radzik suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Lisa Radzik suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Lisa Radzik has incurred and

Electronically Filed – City of St. Louis – May 06, 2016 – 04:15 PM

will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lisa Radzik has otherwise been damaged in a personal and pecuniary nature.

20.    Plaintiff Allan Kotter is a citizen of the State of New Jersey. On or about December 28, 2006, Plaintiff Allan Kotter had a Bard IVC filter implanted in the State of Pennsylvania, pursuant to a doctor's order. On or around December 13, 2012, Plaintiff Allan Kotter suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Allan Kotter suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Allan Kotter has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Allan Kotter has otherwise been damaged in a personal and pecuniary nature.

21.    Plaintiff Denise Gill is a citizen of the State of New Jersey. On or about November 16, 2006, Plaintiff Denise Gill had a Bard IVC filter implanted in the State of New Jersey, pursuant to a doctor's order. On or around December 1, 2006, Plaintiff Denise Gill suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Denise Gill suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the

11

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Denise Gill has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Denise Gill has otherwise been damaged in a personal and pecuniary nature.

22.    Plaintiff Faith Hinchman is a citizen of the State of New Jersey. On or about February 2, 2011, Plaintiff Faith Hinchman had a Bard IVC filter implanted in the State of Pennsylvania, pursuant to a doctor's order. On or around September 1, 2015, Plaintiff Faith Hinchman suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Faith Hinchman suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Faith Hinchman has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Faith Hinchman has otherwise been damaged in a personal and pecuniary nature.

23.    Plaintiff Michelle Baggett is a citizen of the State of Ohio. On or about May 28, 2013, Plaintiff Michelle Baggett had a Bard IVC filter implanted in the State of Ohio, pursuant to a doctor's order. On or around July 6, 2015, Plaintiff Michelle Baggett suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter

12

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Michelle Baggett suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Michelle Baggett has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Michelle Baggett has otherwise been damaged in a personal and pecuniary nature.

24.    Plaintiff Angela Gibson is a citizen of the State of Florida. On or about October 26, 2006, Plaintiff Angela Gibson had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order. On or around August 22, 2012, Plaintiff Angela Gibson suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Angela Gibson suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Angela Gibson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Angela Gibson has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

25. Plaintiff Diane Reynoldson is a citizen of the State of Nebraska. On or about July 24, 2013, Plaintiff Diane Reynoldson had a Bard IVC filter implanted in the State of Nebraska, pursuant to a doctor's order. On or around November 1, 2013, Plaintiff Diane Reynoldson suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Diane Reynoldson suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Diane Reynoldson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Diane Reynoldson has otherwise been damaged in a personal and pecuniary nature.

26. Plaintiff Joann Cardona is a citizen of the State of Connecticut. On or about April 27, 2004, Plaintiff Joann Cardona had a Bard IVC filter implanted in the State of Connecticut, pursuant to a doctor's order. On or around October 5, 2006, Plaintiff Joann Cardona suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Joann Cardona suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Joann Cardona has incurred and

14

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Joann Cardona has otherwise been damaged in a personal and pecuniary nature.

27.    Plaintiff Jason Smith is a citizen of the State of Alabama.  On or about June 26, 2004, Plaintiff Jason Smith had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order.  On or around May 19, 2009, Plaintiff Jason Smith suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Jason Smith suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter.  As a direct and proximate result of these injuries, Plaintiff Jason Smith has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jason Smith has otherwise been damaged in a personal and pecuniary nature.

28.    Plaintiff Tammy Dykema is a citizen of the State of Wisconsin.  On or about March 29, 2004, Plaintiff Tammy Dykema had a Bard IVC filter implanted in the State of Missouri, pursuant to a doctor's order.  On or around April 26, 2004, Plaintiff Tammy Dykema suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Tammy Dykema suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the

Electronically Filed - City of St. Louis - May 09, 2016 - 04:15 PM

Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Tammy Dykema has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Tammy Dykema has otherwise been damaged in a personal and pecuniary nature.

29. Plaintiff Tony Walker is a citizen of the State of Mississippi. On or about November 4, 2011, Plaintiff Tony Walker had a Bard IVC filter implanted in the State of Mississippi, pursuant to a doctor's order. On or around November 7, 2014, Plaintiff Tony Walker suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Tony Walker suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Tony Walker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Tony Walker has otherwise been damaged in a personal and pecuniary nature.

30. Plaintiff Sheila May is a citizen of the State of Ohio. On or about January 6, 2014, Plaintiff Sheila May had a Bard IVC filter implanted in the State of Ohio, pursuant to a doctor's order. On or around September 29, 2014, Plaintiff Sheila May suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Sheila May suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Sheila May has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sheila May has otherwise been damaged in a personal and pecuniary nature.

31.    Plaintiff Brian Morrison is a citizen of the State of Delaware. On or about July 30, 2008, Plaintiff Brian Morrison had a Bard IVC filter implanted in the State of Delaware, pursuant to a doctor's order. On or around November 1, 2008, Plaintiff Brian Morrison suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Brian Morrison suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Brian Morrison has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Brian Morrison has otherwise been damaged in a personal and pecuniary nature.

32.   Plaintiff Melvin Holmes, III is a citizen of the State of Illinois.  On or about September 13, 2004, Plaintiff Melvin Holmes, III had a Bard IVC filter implanted in the State of Illinois, pursuant to a doctor's order.  On or around July 9, 2012, Plaintiff Melvin Holmes, III suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Melvin Holmes, III suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter.  As a direct and proximate result of these injuries, Plaintiff Melvin Holmes, III has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Melvin Holmes, III has otherwise been damaged in a personal and pecuniary nature.

33.   Plaintiff Eric Robinson is a citizen of the State of Colorado.  In or around 2006, Plaintiff Eric Robinson had a Bard IVC filter implanted in the State of Colorado, pursuant to a doctor's order.  I or around August 6, 2009, Plaintiff Eric Robinson suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Eric Robinson suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter.  As a direct and proximate result of these injuries, Plaintiff Eric Robinson has incurred and will incur

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Eric Robinson has otherwise been damaged in a personal and pecuniary nature.

34.     Plaintiff Christine Baker is a citizen of the State of Florida.  On or about January 2009, Plaintiff Christine Baker had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order.  On or around August 10, 2013, Plaintiff Christine Baker suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Christine Baker suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter.  As a direct and proximate result of these injuries, Plaintiff Christine Baker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Christine Baker has otherwise been damaged in a personal and pecuniary nature.

35.     Plaintiff Susan Cole is a citizen of the State of Iowa.  On or about December 1, 2008, Plaintiff Susan Cole had a Bard IVC filter implanted in the State of Iowa, pursuant to a doctor's order.  On or around July 1, 2015, Plaintiff Susan Cole suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable.  Plaintiff Susan Cole suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Susan Cole has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Susan Cole has otherwise been damaged in a personal and pecuniary nature.

36.    Plaintiff Sandra Graham is a citizen of the State of West Virginia. On or about February 25, 2010, Plaintiff Sandra Graham had a Bard IVC filter implanted in the State of West Virginia, pursuant to a doctor's order. On or around August 1, 2015, Plaintiff Sandra Graham suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Sandra Graham suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Sandra Graham has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sandra Graham has otherwise been damaged in a personal and pecuniary nature.

37.    Plaintiff Cynthia Houston is a citizen of the State of California. On or about June 30, 2005, Plaintiff Cynthia Houston had a Bard IVC filter implanted in the State of California, pursuant to a doctor's order. On or around March 22, 2015, Plaintiff Cynthia Houston suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Cynthia Houston suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Cynthia Houston has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Cynthia Houston has otherwise been damaged in a personal and pecuniary nature.

38. Plaintiff Tina Kennedy is a citizen of the State of Kansas. On or about March 1, 2014, Plaintiff Tina Kennedy had a Bard IVC filter implanted in the State of Kansas, pursuant to a doctor's order. On or around October 22, 2015, Plaintiff Tina Kennedy suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Tina Kennedy suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Tina Kennedy has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Tina Kennedy has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

39.    Plaintiff Peter McGrath is a citizen of the United Kingdom. On or about July 5, 2012, Plaintiff Peter McGrath had a Bard IVC filter implanted in the State of California, pursuant to a doctor's order. On or around February 15, 2015, Plaintiff Peter McGrath suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Peter McGrath suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Peter McGrath has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Peter McGrath has otherwise been damaged in a personal and pecuniary nature.

40.    Plaintiff Sabir Saad is a citizen of the State of New Jersey. On or about November 1, 2013, Plaintiff Sabir Saad had a Bard IVC filter implanted in the State of New Jersey, pursuant to a doctor's order. On or around July 7, 2014, Plaintiff Sabir Saad suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Sabir Saad suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Sabir Saad has incurred and will incur

22

Electronically Filed - City of St. Louis - May 05, 2016 - 04:15 PM

medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sabir Saad has otherwise been damaged in a personal and pecuniary nature.

41.   Plaintiff Ronell Smith is a citizen of the State of California. On or about February 1, 2007, Plaintiff Ronell Smith had a Bard IVC filter implanted in the State of California, pursuant to a doctor's order. On or around November 21, 2015, Plaintiff Ronell Smith suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Ronell Smith suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Ronell Smith has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Ronell Smith has otherwise been damaged in a personal and pecuniary nature.

42.   Plaintiff Wilfred Vegiard is a citizen of the State of Florida. On or about August 18, 2006, Plaintiff Wilfred Vegiard had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order. On or around October 28, 2015, Plaintiff Wilfred Vegiard suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Wilfred Vegiard suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the

23

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Wilfred Vegiard has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Wilfred Vegiard has otherwise been damaged in a personal and pecuniary nature.

43. Plaintiff Jerome Weiss is a citizen of the State of Maryland. On or about April 25, 2010, Plaintiff Jerome Weiss had a Bard IVC filter implanted in the State of Maryland, pursuant to a doctor's order. On or around August 31, 2015, Plaintiff Jerome Weiss suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Jerome Weiss suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Jerome Weiss has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jerome Weiss has otherwise been damaged in a personal and pecuniary nature.

44. Plaintiff Alana Adams is a citizen of the State of Tennessee. On or about May 19, 2004, Plaintiff Alana Adams had a Bard IVC filter implanted in the State of Tennessee, pursuant to a doctor's order. On or around February 1, 2005, Plaintiff Alana Adams suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter

becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Alana Adams suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Alana Adams has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Alana Adams has otherwise been damaged in a personal and pecuniary nature.

45. Plaintiff Helen Artist-Rogers is a citizen of the State of Colorado. On or about May 15, 2012, Plaintiff Helen Artist-Rogers had a Bard IVC filter implanted in the State of Colorado, pursuant to a doctor's order. On or around November 25, 2014, Plaintiff Helen Artist-Rogers suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Helen Artist-Rogers suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Helen Artist-Rogers has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Helen Artist-Rogers has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - May 09, 2016 - 04:15 PM

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

46.     Plaintiff William Brown, Sr. is a citizen of the State of Alaska. On or about July 23, 2010, Plaintiff William Brown, Sr. had a Bard IVC filter implanted in the State of Ohio, pursuant to a doctor's order. On or around May 8, 2015, Plaintiff William Brown, Sr. suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff William Brown, Sr. suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff William Brown, Sr. has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff William Brown, Sr. has otherwise been damaged in a personal and pecuniary nature.

47.     Plaintiff Jessica Carroll is a citizen of the State of Florida. On or about December 24, 2013, Plaintiff Jessica Carroll had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order. On or around May 6, 2014, Plaintiff Jessica Carroll suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Jessica Carroll suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Jessica Carroll has incurred and

Electronically Filed – City of St. Louis – May 06, 2016 – 04:15 PM

will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jessica Carroll has otherwise been damaged in a personal and pecuniary nature.

48.     Plaintiff Suette Collins is a citizen of the State of Indiana. On or about August 31, 2012, Plaintiff Suette Collins had a Bard IVC filter implanted in the State of Indiana, pursuant to a doctor's order. On or around January 22, 2013, Plaintiff Suette Collins suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Suette Collins suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Suette Collins has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Suette Collins has otherwise been damaged in a personal and pecuniary nature.

49.     Plaintiff James Nicol is a citizen of the State of Connecticut. On or about July 22, 2010, Plaintiff James Nicol had a Bard IVC filter implanted in the State of Connecticut, pursuant to a doctor's order. On or around January 4, 2013, Plaintiff James Nicol suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff James Nicol suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the

Electronically Filed – City of St. Louis – May 06, 2016 – 04:15 PM

Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff James Nicol has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff James Nicol has otherwise been damaged in a personal and pecuniary nature.

50.    Plaintiff Vanessa Marshall is a citizen of the State of Florida. On or about December 20, 2010, Plaintiff Vanessa Marshall had a Bard IVC filter implanted in the State of Florida, pursuant to a doctor's order. On or around July 16, 2012, Plaintiff Vanessa Marshall suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Vanessa Marshall suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Vanessa Marshall has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Vanessa Marshall has otherwise been damaged in a personal and pecuniary nature.

51.    Plaintiff William Salters is a citizen of the State of New Jersey. On or about November 14, 2014, Plaintiff William Salters had a Bard IVC filter implanted in the State of New Jersey, pursuant to a doctor's order. On or around August 10, 2015, Plaintiff William Salters suffered significant physical personal injuries directly and proximately caused by the

28

Electronically Filed - City of St. Louis - May 06, 2016 - 04:16 PM

aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff William Salters suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff William Salters has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Walter Salters has otherwise been damaged in a personal and pecuniary nature.

52.    Plaintiff Jerry Simerly is a citizen of the State of Nebraska. On or about June 21, 2007, Plaintiff Jerry Simerly had a Bard IVC filter implanted in the State of Nebraska, pursuant to a doctor's order. On or around February 5, 2012, Plaintiff Jerry Simerly suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Jerry Simerly suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Jerry Simerly has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jerry Simerly has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - May 05, 2016 - 04:15 PM

53.    Plaintiff Annie Thomas is a citizen of the State of Georgia. On or about June 10, 2014, Plaintiff Annie Thomas had a Bard IVC filter implanted in the State of Georgia, pursuant to a doctor's order. On or around December 31, 2015, Plaintiff Annie Thomas suffered significant physical personal injuries directly and proximately caused by the aforementioned IVC filter becoming imbedded, tilting, migrating, fracturing, perforating Plaintiff, and/or otherwise becoming irretrievable. Plaintiff Annie Thomas suffered these injuries and the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Bard IVC filter and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the Bard IVC filter. As a direct and proximate result of these injuries, Plaintiff Annie Thomas has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Annie Thomas has otherwise been damaged in a personal and pecuniary nature.

54.    Defendant C.R. BARD, INC., (hereinafter "Bard'), is a corporation duly organized and existing under the laws of the state of Delaware and has its principal place of business in New Jersey. Bard at all times relevant to this action, designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Recovery®, G2®, G2®X (G2 Express®), Eclipse®, Meridian®, and Denali® Filter Systems to be implanted in patients in St. Louis and throughout Missouri and the United States.

55.    Defendant BARD PERIPHERAL VASCULAR, INC. (hereinafter "BPV") is a wholly-owned subsidiary corporation of defendant Bard, with its principal place of business at 1625 West Third Street, Tempe, Arizona. BPV at all times relevant to this action, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed,

30

distributed, and sold the Recovery®, G2®, G2®X (G2 Express®), Eclipse®, Meridian®, and Denali® Filter Systems to be implanted in patients in St. Louis and throughout Missouri and the United States.

56.     Hereinafter, each of the above Defendants shall be collectively referred to as "Defendants" or "Bard." At all times alleged herein, Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

57.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, and joint venture.

58.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, their Bard IVC Filter medical device products.

59.     Bard develops, manufactures, sells and distributes medical devices for use in various medical applications including endovascular cardiology, and surgical products in St. Louis and throughout Missouri, the United States and around the world.   Bard's products include the Bard IVC Filters, which are used for the prevention of recurrent pulmonary embolism via placement in the vena cava.

31

## VENUE AND JURISDICTION

60.     All Plaintiffs herein are properly joined pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure, as their claims all arise out of the same series of transactions or occurrences. The claims in this case present common questions of fact and law concerning, among other things, what information Defendants possessed concerning the harmful effects of Bard IVC Filters, what information it disclosed to patients and physicians about those harmful effects, and what information Defendants were required by law to disclose about those harmful effects. Plaintiffs' claims are all logically related in that all Plaintiffs claim that the Bard IVC Filters were defectively designed, manufactured and marketed by Defendants, and that Defendants failed to provide adequate warnings regarding the dangers posed by the use of Bard IVC Filters. All Plaintiffs suffered physical personal injuries caused by the device becoming imbedded, tilting, migrating, fracturing, perforating, and/or otherwise becoming irretrievable, all of which will require ongoing monitoring, as result of the same wrongful conduct and tortious acts by the Defendants, including, but not limited to, the Defendants' failure to conduct adequate safety and efficacy studies, the Defendants' distribution of inadequate and misleading marketing materials and literature to physicians and patients, and the lack of adequate warnings provided to physicians and patients.

61.     Defendants' wrongful conduct and tortious acts were done without any regard for individual Plaintiff differences. Defendants' conduct in designing, developing, marketing, and distributing the Bard IVC Filters relates to all Plaintiffs' claims herein and makes up a common universe of facts underlying the Plaintiffs' claims.

62.     At all pertinent times, Defendants have conducted and continue to conduct continuous and systematic business in the State of Missouri, have purposefully injected their

32

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

products, including the Bard IVC Filters, into the stream of commerce to be sold in Missouri, and have taken actions such that they should anticipate being sued in the State of Missouri.

63. Defendants have transacted business in the State of Missouri that has given rise to this cause of action, and have committed torts in whole or in part in the State of Missouri, including torts giving rise to this action. This includes the marketing and selling of the Bard IVC Filter in the State of Missouri, which gave rise to this cause of action as a whole.

64. There is no federal subject matter jurisdiction because no federal question is raised and some of the Plaintiffs and the Defendants are citizens of the same state, i.e., New Jersey, Delaware, or Arizona.

65. Venue is proper in this Court pursuant to Mo. Rev. Stat. 508.010 because Plaintiff Angela Novy was first injured by the Bard IVC Filter in the City of St. Louis. Plaintiff Angela Novy received implantation of a Bard IVC Filter in the City of St. Louis at Barnes-Jewish Hospital.

**PLAINTIFFS' BARD IVC FILTER USE**

66. All Plaintiffs were implanted with the Bard IVC Filter by their doctors or health care providers, and they all used the Bard IVC Filter as intended and in a foreseeable manner. The Bard IVC Filters used by all Plaintiffs reached them without substantial change in their condition from when they were manufactured or sold.

67. As a direct and proximate result of implantation of the Bard IVC Filters, the Plaintiffs developed severe, significant injuries, including injuries attendant to filter imbedding, tilting, migrating, fracturing, perforating, and/or otherwise becoming irretrievable, and monitoring therefore.

68. Plaintiffs would not have used the Bard IVC Filters if Defendants had properly disclosed the risks associated with their filter products and/or would have been adequately

33

monitored for the side effects associated with Bard IVC Filters, and would not have suffered severe physical and personal injuries.

### TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

69. Plaintiffs filed this lawsuit within the applicable limitations period of first suspecting that the Bard IVC Filter was the cause of their injuries. Plaintiffs could not, by the exercise of reasonable diligence, have discovered the wrongful cause of their Bard IVC Filter - induced injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

70. Furthermore, the running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs, and their prescribing physicians, the true risks associated with the Bard IVC Filters.

71. As a result of Defendants' actions, the Plaintiffs and their prescribing and treating physicians were unaware, and could not reasonably know or learned through reasonable diligence that the Plaintiffs had been exposed to the risks alleged herein, and that those risks were the direct and proximate result of Defendants' acts and omissions.

72. Through their affirmative misrepresentations and omissions pertaining to the safety of the Bard IVC Filters, Plaintiffs were prevented from discovering this information sooner because the Defendants herein misrepresented and continued to misrepresent to the public and to the medical community that the filter devices are safe to use, and the Defendants have fraudulently

34

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

concealed facts and information that could have led Plaintiffs to discover a potential cause of action.

73.     Additionally, the economics of this fraud should be considered. The Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose and marketing and promoting a profitable medical device, notwithstanding the known or reasonably known risks. The Plaintiffs and their prescribing physicians could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of a related health risk associated with Defendants Bard IVC Filters, and were forced to rely on the Defendants' misrepresentations.

## BACKGROUND

## INFERIOR VENA CAVA FILTERS GENERALLY

74.     IVC filters were first made commercially available to the medical community in the 1960s. Over the years, medical device manufacturers have introduced several different designs of IVC filters.

75.     An IVC filter is a device that is represented by Defendants to be designed to filter or "catch" blood clots that travel from the lower portions of the body to the heart and lungs. IVC filters were originally designed to be permanently implanted in the IVC.

76.     The IVC is a vein that returns blood to the heart from the lower portions of the body. In certain people, for various reasons, blood clots travel from the vessels in the legs and pelvis, through the vena cava and into the lungs. Oftentimes, these blood clots develop in the deep leg veins, a condition called "deep vein thrombosis" or "DVT." Once blood clots reach the lungs, they are considered "pulmonary emboli" or "PE." Pulmonary emboli present risks to human health.

Electronically Filed - City of St. Louis - May 26, 2016 - 04:15 PM

77.    People at risk for DVT/PE can undergo medical treatment to manage the risk. For example, a doctor may prescribe anticoagulant therapies such as medications like Heparin, Warfarin, or Lovenox to regulate the clotting factor of the blood. In some people who are at high risk for DVT/PE and who cannot manage their conditions with medications, physicians may recommend surgically implanting an IVC filter to prevent thromboembolitic events.

78.    As stated above, IVC filters have been on the market for decades and were permanent implants. However, use of these filters was limited primarily to patients who were contraindicated for anticoagulation therapy.

79.    In order to increase sales of these devices, Bard sought to expand the market for prophylactic use among nontraditional patient populations that were temporarily at risk of developing blood clots.

80.    Specifically, Bard targeted the bariatric, trauma, orthopedic and cancer patient population. Expansion to these new patient groups would triple sales and the first manufacturer to market would capture market share.

81.    At the same time, Bard was aware that physicians developed interest in filter devices that could be easily removed after the risk of clotting in these new patient populations subsided. This, too, was an opportunity to gain market share in the lucrative IVC filter market.

82.    Other manufacturers also saw this opportunity, which triggered a race to market a device that provided physicians the option to retrieve the filter after the clot risk subsided.

83.    Bard was the first medical device manufacturer to obtain FDA clearance for marketing a "retrievable" IVC filter (the Bard Recovery® filter) in July 2003.

84.    This "clearance" was obtained despite lack of adequate testimony on the safety and efficacy of the new line of devices.

85.    As shown below, Bard's retrievable IVC filters have been plagued with problems – all created by Bard itself – most notably, the absence of any evidence that the products were effective in preventing pulmonary embolism (the very condition the product was indicated to prevent).

86.    Years after the implantation of retrievable filters into the bodies of patients, scientists began to study the effectiveness of the retrievable filters – studies that Bard itself had never done before placing the product on the market. As recently as October 2015, an expansive article published in the *Annals of Surgery* concerning trauma patients inserted with IVC filters concluded that IVC filters were not effective in preventing pulmonary emboli, and instead actually caused thrombi to occur.

87.    Comparing the results of over 30,000 trauma patients who had not received IVC filters with those who had received them, the *Annals of Surgery* study published its alarming results:

    a. Almost twice the percentage of patients with IVC filters in the study died compared to those that had not received them.

    b. Over five times the relative number of patients with IVC filters developed DVTs.

    c. Over four times the relative percentage of patients with filters developed thromboemboli.

    d. Over twice the percentage of patients developed a pulmonary embolus – the very condition Bard told the FDA, physicians, and the public that its IVC Filters were designed to prevent.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

88. This *Annals of Surgery* study — and many others referenced by it — now shows without any question that IVC filters are not only utterly ineffective but that they are themselves a health hazard.

## THE RECOVERY® FILTER

**A.    Development and Regulatory Clearance of the Recovery® Filter**

89. Bard has distributed and marketed the Simon Nitinol Filter ("SNF") device since 1992. The SNF is a permanent filter with no option to retrieve it after implantation.

90. The SNF was initially manufactured by a company known as Nitinol Medical Technologies. In late 1999, Bard worked with Nitinol on the redesign of the SNF in order to make it retrievable. On October 19, 2001, Bard purchased the rights to manufacture, market, and sell this new, redesigned product in development at the time. This product ultimately became the Recovery® filter.

91. Bard's purpose for making a retrievable IVC filter was to increase profits by expanding the overall IVC filter market and, in turn, Bard's percentage share of that market.

92. Bard engaged in an aggressive marketing campaign for the filter, despite negative clinical data.

93. On November 27, 2002, Bard bypassed the more onerous Food and Drug Administration's ("FDA's") approval process for new devices and obtained "clearance" under Section 510(k) of the Medical Device Amendments to the Food, Drug, and Cosmetic Act to market the Recovery® filter as a *permanent* filter by claiming it was substantially similar in respect to safety, efficacy, design, and materials as the SNF.

94. Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the

safety or efficacy of the said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" (PMA) process in its amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, which the court quoted from:

> A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a premarket notification to the agency in accordance with section 510(k) of the [Food Drug and Cosmetic Act]. 21 U.S.C. § 360(k). A device found to be 'substantially equivalent' to a predicate device is said to be 'cleared' by FDA (as opposed to 'approved' by the agency under a PMA. *A pre-market notification submitted under 510(k) is thus entirely different from a PMA which must include data sufficient to demonstrate that the IVC Filters is safe and effective.*

376 F.3d 163, 167 (3d Cir. 2004) (emphasis in original).

95.    In *Medtronic, Inc. v. Lohr*, the U.S. Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is "substantially equivalent" to a pre-existing device, it can be marketed without further regulatory analysis. . . . The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in average of 20 hours. . . . As one commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed quickly."

518 U.S. 470, 478-79 (1996) (quoting Adler, The 1976 Medical Device Amendments: A Step in the Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).

96.    Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse events associated with the drug . . . and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling . . . ." This obligation extends to post-market monitoring of adverse events/complaints.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

97.    In July 2003, through this 510(k) process, Bard obtained clearance from the FDA to market the Recovery® filter for optional retrieval.

98.    Although Bard began aggressively marketing the Recovery® filter in 2003, full market release did not occur until January 2004.

99.    Bard was aware that the Recovery® filter was also used extensively off-label, including for purely prophylactic reasons for trauma patients or patients with upcoming surgeries such as bariatric (weight loss) and orthopedic procedures.

100.    The Recovery® filter consists of two (2) levels of six (6) radially distributed NITINOL (a nickel titanium alloy whose full name is Nickel Titanium Naval Ordinance Laboratory) struts that are designed to anchor the filter into the inferior vena cava and to catch any embolizing clots.

101.    This filter has six short struts, which are commonly referred to as the "arms," and six long struts, which are commonly referred to as the "legs."

102.    Each strut is held together by a single connection to a cap located at the top of the filter. According to the patent application filed for this device, the short struts are primarily for "centering" or "positioning" within the vena cava, and the long struts with attached hooks are designed primarily to prevent the device from migrating in response to "normal respiratory movement" or "pulmonary embolism."

103.    The alloy NITINOL possesses "shape memory," meaning NITINOL will change shape according to changes in temperature, then retake its prior shape after returning to its initial temperature.

40

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

104. When placed in saline, the Recovery® filter's NITINOL struts become soft and can be straightened to allow delivery through a small-diameter catheter. The NITINOL struts then resume their original shape when warmed to body temperature in the vena cava.

105. The Recovery® filter is inserted via catheter guided by a physician (normally an interventional radiologist) through a blood vessel into the inferior vena cava. The Recovery® Filter is designed to be retrieved in a similar fashion.

106. According to the Instructions for Use of this medical device, only the Recovery® Cone System could be used to retrieve the Recovery® filter (as well as subsequent generations of Bard's IVC filters).

107. The Recovery® Cone System is an independent medical device requiring approval by the FDA under the pre-market approval process or, if a substantially equivalent medical device was already on the market, clearance by the FDA pursuant to the 510(k) application process.

108. Although Bard marketed and sold the Recovery® Cone System separately, it never sought or obtained approval or clearance from the FDA for this device.

109. Bard's sale of the Recovery® Cone System was, therefore, illegal.

110. Bard illegally sold the Recovery® Cone System in order to promote the Recovery® filter as having a retrieval option.

**B.    Post-Market Performance Revealed the IVC Filters Failed to Perform As Expected**

111. Once placed on the market, Bard immediately became aware of numerous confirmed events where its Recovery® filter fractured, migrated, or perforated the vena cava, caused thrombus and clotting, and caused serious injury, including death.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

112.    Premarket and post-market clinical trials revealed that the Recovery® failed and caused serious risk of harm. In addition, peer-reviewed literature reflected that such filters actually increased the risk of patients developing thromboembolitic events.

113.    Approximately a month after the full-scale launch of the Recovery® filter, on February 9, 2004, Bard received notice of the first death associated with this filter. The next day, a MAUDE analysis was performed which revealed that there had been at least two other migration-related adverse events reported to Bard in 2003.

114.    MAUDE is a database maintained by the FDA to house medical device reports submitted by mandatory reporters (such as manufacturers and device user facilities) and voluntary reporters (such as health care providers and patients).

115.    Instead of pulling the Recovery® filter off the market, Bard focused on public relations and protecting its brand and image. By February 12, 2004, Bard had formed a crisis communication team and drafted at least four communiques to pass onto its sales force containing false information designed to be relayed to concerned doctors.

116.    By April of 2004, at least three deaths had been reported to Bard. Yet again, instead of recalling its deadly device, Bard concealed this information from doctors and patients and hired the public relations firm Hill & Knowlton to address anticipated publicity that could affect stock prices and sales.

117.    Bard made the decision to continue to market and sell the Recovery® filter until its next generation product, the G2® IVC filter, was cleared by the FDA.

118.    The G2® filter, however, was not cleared for market until August 29, 2005.

119.    Meanwhile, the death count escalated.

42

120. On July 12, 2004, C.R. Bard CEO Timothy Ring received an executive summary reporting that there were at least 12 filter migrations resulting in four deaths and at least 17 reports of filter fracture, six cases of which involved strut embolization to the heart.

121. This same report advised that fracture rates for the Recovery® filter exceed reported rates of other filters.

122. These events revealed, or should have revealed, to Bard that the Recovery® filter is prone to an unreasonably high risk of failure and patient injury following placement in the human body.

123. Bard also learned that the Recovery® filter failed to meet migration resistance testing specifications.

124. In addition, multiple early studies reported that the Recovery® filter has a fracture and migration rate ranging from 21% to 31.7%, rates that are substantially higher compared to other IVC filters. More recently, fractures were reported to be as high as 40% after five and a half years from the date of implant.

125. Bard had clear evidence that the Recovery® filter was not substantially equivalent to the predecessor SNF, making the Recovery® filter adulterated and misbranded, requiring its immediate withdrawal from the market.

126. At least one Bard executive concluded the Recovery® filter posed an unreasonable risk of harm and required corrective action, including a recall.

127. Likewise, Bard's G2® filter was predicted to have fracture rates as high as 37.5% after five years from date of implant.

128. Subsequent Bard IVC Filter models, including the electropolished version of the G2® filter known as the Eclipse, only marginally increased fracture resistance.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:16 PM

129.    When IVC filter fractures occur, shards of the filter or even the entire filter can travel to the heart, where they can cause cardiac tamponade, perforation of the atrial wall, myocardial infarction, and/or death.

130.    Bard IVC Filters similarly pose a high risk of tilting and perforating the vena cava walls. When such tilting occurs, the filters can also perforate the adjacent aorta, duodenum, small bowel, spine, or ureter, which may lead to and, upon information and belief, already have led to retroperitoneal hematomas, small-bowel obstructions, extended periods of severe pain, and/or death.

131.    The Adverse Event Reports ("AERs") associated with all IVC filters demonstrate that Bard IVC Filters are far more prone to failure then are other similar IVC filters. A review of the FDA MAUDE database from the years 2004 through 2008 shows that Bard IVC Filters are responsible for the following percentages of all IVC filter AERs:

a.    50% of all adverse events;

b.    64% of all occurrences of migration of the IVC Filters;

c.    69% of all occurrences of vena cava wall perforation; and

d.    70% of all occurrences of filter fracture.

132.    These failures were often associated with severe patient injuries such as:

a.    Death;

b.    Hemorrhage;

c.    Cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart);

d.    Cardiac arrhythmia and other symptoms similar to myocardial infarction;

e.    Severe and persistent pain; and

44

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

f.   Perforations of tissue, vessels and organs.

133.   These failures and resulting injuries are attributable, in part, to the fact that the Bard IVC Filter design was unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

134.   In addition to design defects, Bard IVC Filters suffer from manufacturing defects. These manufacturing defects include, but are not limited to, the existence of "draw markings" and circumferential grinding markings on the exterior of the surface of the filters.

135.   The presence of these draw markings and/or circumferential grinding markings further compromises the structural integrity of the Bard IVC Filters while in the body. In particular, the Recovery® filter is prone to fail at or near the location of draw markings/circumferential grinding markings on the struts of the filters. These exterior manufacturing defects render Bard IVC Filters too weak to withstand normal placement within the human body.

136.   Bard was aware that Bard IVC Filters had substantially higher reported failure rates than all other IVC filters for fracture, perforation, migration, and death. For example:

a.   On April 23, 2004, Bard's Corporate VP of Quality Assurance sent an e-mail noting that the Recovery® filter's reported failure rates "did not look good compared to permanent filters" and promised to remove the filter from the market if its reported death rate became "significantly greater than the rest of the pack."

b.   On July 9, 2004, a BPV safety analysis of reported failure rates determined that the Recovery® filter had a reported failure rate that was 28 times higher than all other IVC filters.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

c. On December 17, 2004, analysis determined that the "[r]eports of death, filter migration (movement), IVC perforation, and filter fracture associated with the Recovery® filter were seen in the MAUDE database at reporting rates that were 4.6, 4.4, 4.1, and 5.3 times higher, respectively, than reporting rates for all other filters. . . . These deficiencies were all statistically significant . . . [and were] significantly higher than those for other removable filters."

d. By December 2004, according to BPV's own findings pursuant to its safety procedure, the Recovery® filter had so many reported failures that it was deemed not reasonably safe for human use and required "correction."

e. A BPV safety analysis from June 28, 2011, revealed that the Recovery® filter had a reported fracture rate 55 times higher than the SNF.

f. Whereas the Recovery® filter was reported to have caused over a dozen deaths by early 2005, the SNF has never — to Plaintiffs' knowledge — been reported as associated with a patient death.

C.     **Defendants Knew Why the Recovery® Filter Was Failing and Were Aware of Available Design Changes that Could Substantially Reduce Failures**

137. Bard knew why the design changes made to the Recovery® filter were causing failures.

138. Bard was aware that the diameter of the leg hooks was a substantial factor in a filter's ability to resist migration and fatigue.

139. By reducing the diameter of the hooks on the Recovery® filter, Bard had reduced the device's ability to remain stable and not fracture.

46

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

140. Bard also reduced the leg span of the Recovery® filter from that of the SNF filter by 25%. As a result, Bard knew its retrievable IVC filters lacked a sufficient margin of safety to accommodate expansion of the vena cava (distension) after placement.

141. Bard was also aware that its failure to electropolish the wire material prior to distribution meant that Bard IVC Filters had surface damage that reduced their fatigue resistance.

142. Bard was also aware that the Recovery® filter had a high propensity to tilt and perforate the vena cava, which substantially increased the risk of fracture.

143. Bard was also aware that fatigue resistance could be increased by decreasing the sharpness of the angle of the wire struts where they exited the cap at the top of the IVC filters, and by chamfering (rounding or reducing the sharpness) of the cap edge against which the struts rubbed.

144. A few examples of Bard's awareness of the unreasonably dangerous problems with Bard IVC Filters include:

    a. On June 18, 2003, BPV engineer Robert Carr sent an e-mail noting that chamfering the edge of the cap would reduce the likelihood of fracture.

    b. On March 16, 2004, a BPV engineer sent an email admitting that the surface damage seen on the Recovery® filter from the manufacturing process decreases fatigue resistance and that electropolishing increases fatigue resistance.

    c. In an April 2004 meeting, BPV was warned by its physician consultants, Drs. Venbrux and Kaufman, that the migration resistance of the Recovery® filter needed to be raised from 50 mmHg to 140 mmHg. They further warned BPV that Bard's Recovery® filter was a "wimpy" filter and its radial force was inadequate to assure stability.

d. On May 5, 2004, a BPV engineer sent an email stating that adding a "chamfer" to the filter would "address the arm fracture issue."

e. On May 26, 2004, a BPV engineer sent an email stating that a proposed modified Recovery® filter design with a large chamfer lasted 50 bending cycles before breaking, whereas another proposed modified Recovery® filter with a small chamfer broke after ten bending cycles.

145. Prior to Plaintiffs being implanted with a Bard IVC Filter, Bard was aware of other design changes that could make the Recovery® filter substantially safer. In a report dated February 16, 2005, BPV describes the design changes to the Recovery® filter, which became known as the G2® Filter. The report states that the Recovery® filter has been modified to "to increase migration and fracture resistance, and to minimize the likelihood of leg twisting, appendage snagging, filter tilting, and caval perforation." The document goes on to describe the design modifications, which include:

a. Increased ground wire diameter of the hook from .0085" to .0105" in order to improve the fracture resistance of the hook and to improve the migration resistance of the filter.

b. The leg span has been increased from 32mm to 40mm in order to improve the ability of the filter to expand with a distending vena cava reducing risk of migration.

c. The total filter arm length has increased from 20mm to 25mm, enlarging the arm span from 30mm to 33mm to aid in filter centering.

48

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

d.  An additional inward bend has been applied to the end of the filter arm in order to improve arm interaction with the vessel wall and to address caval perforations and appendage snagging.

e.  The arc of filter arm, as it attaches to the sleeve, has been modified to have a smooth radial transition instead of sharp angle. This change was made in order to reduce the stress concentration generated by the sharp angle and thus improve fracture resistance in the area of the filter.

f.  The report concludes that the design modifications have substantially reduced the risk of fracture.

146.  Subsequent design changes only marginally improved product safety, but did not fully or adequately address the Bard IVC Filters' deadly defects.

147.  Electropolishing was added to the Bard IVC Filters in 2010 to reduce the risk of fracture. Electropolishing implanted Nitinol IVC filters was the industry standard, and increased fatigue resistance by at least 25%, according to Bard's internal testing.

148.  Additional anchors were added to the anchoring system on the filter in 2011, in what became known as the Meridian filter. The intended purpose of this designed improvement was to decrease the risk of tilting, which increases the risk of fracture and perforation, and reduce caudal migration.

149.  Bard added penetration limiters with the introduction of Denali Filter in May 2013.

150.  Penetration limiters are designed to reduce perforation and penetration of the vena cava.

**D.  Bard Misrepresented and Concealed the IVC Filters' Risks and Benefits**

151.    Despite knowing that the Recovery® filter was substantially more likely to fracture, migrate, tilt, and cause death than any other filter, Bard marketed its IVC filters as being safer and more effective than all other filters throughout the lifecycle of the product.

152.    Bard further provided mandatory scripts to its Bard IVC filter sales force, which required the sales force to falsely tell physicians that the Recovery® filter was safe because it had the same reported failure rates as all other filters.

153.    Even Bard's updated labeling in December 2004 downplayed and concealed the Recovery® filter's dangerous effects because it suggested fractures almost always cause no harm and that all filters had the same risk of failure.

154.    Bard's updated labeling also downplayed the risk of harm by stating that serious injuries had only been "reported" when Bard knew such injuries had in fact occurred.

E.    **Bard Chose to Keep Selling an Unsafe IVC Filter and Lied to Its Own Sales Force to Ensure Market Share and Stock Prices**

155.    Instead of warning the public or withdrawing the IVC Filters from the market to fix the problems with its IVC Filters, Defendants retained a public relations firm, opened a task force to prevent information from getting out to the public, and devised a plan to address the public if it did.

156.    In 2004, Bard created a Crisis Communication Team that included members of Bard's upper level management, Bard's legal department, and independent consultants.

157.    The Crisis Communication Team created a Crisis Communication Plan, which summarized Bard's motivation for withholding risk information from the public as follows:

> The proliferation of unfavorable press in top-tier media outlets can cause an onslaught of negative activity: a company's employee morale may suffer, stock prices may plummet, analysts may downgrade the affected company's rating, reputations may be ruined temporarily or even permanently. Extensive preparation is critical to help prevent the spread of damaging coverage.

50

Electronically Filed - City of St. Louis - May 06, 2016 - 06:15 PM

158.    In an April 2004 e-mail, BPV consultant Dr. John Lehmann, a member of the Crisis Communication Team, advised Bard to conceal from the public Bard's information about the material risk of its IVC filters. Bard adopted his advice. His e-mail states, among other things:

> Comparison with other filters is problematic in many ways, and we should avoid/downplay this as much as possible. When pressed, we simply paraphrase what was said in the Health Hazard. That "Estimates based on available data suggest that there is no significant difference in the rates of these complications between any of the IVC Filters currently marketed in the U.S., including the Recovery IVC Filters.

> ***

> I wouldn't raise this subject if at possible. It would be a most unusual reporter that will get this far. The testing data I saw in Arizona showed that although RF was certainly within the boundaries of IVC Filters tested, in larger veins it was near the bottom. I would avoid as much as possible getting into this subject, because I'm not sure others would agree with the conclusion that Recovery Vena Cava Filter was just as or more resistant to migration than all retrievable and non-retrievable competitors.

159.    Bard also made false representations and/omissions to the BPV sales force to keep them selling the IVC filters. Bard reassured the sales force that despite the failures with the Recovery® filter, the Bard IVC Filters were safe because they had the same failure rates as all other IVC filters.

160.    By December 2004, BPV's own safety procedure deemed the Recovery® filter not reasonably safe for human use. Yet, Bard continued to market and sell the Recovery® filter into September 2005 and continued to allow its defective product to sit on shelves available to be implanted for an unknown period of time after September 2005.

161.    Even after the G2® filter was launched in September 2005, Bard still failed to warn consumers of the increased risk posed by the Recovery® filter. Instead, Bard again chose to

conceal information about the serious risks of substantial harm from the use of its defective product.

## THE G2®, RECOVERY® G2 AND G2® EXPRESS FILTERS

162.    On or about March 2, 2005, Bard submitted a Section 510(k) premarket notification of intent to market the G2® filter for the prevention of recurrent pulmonary embolism via placement in the inferior vena cava. In doing so, Bard cited the Recovery® filter as the substantially equivalent predicate IVC filter, which was an inappropriate and illegal predicate device since it was being marketed while adulterated and misbranded for failing, among other things, to be as safe and effective as its predicate device, SNF. Bard stated that the only differences between the Recovery® filter and the G2® filter were primarily dimensional, and no material changes or additional components were added. It was considered by Bard the next generation of the Recovery® filter

163.    On March 30, 2005, however, the FDA rejected this application unless Bard and BPV included "black box" warnings that read:

> Warning: The safety and effectiveness of the Recovery® Filter System in morbidly obese patients has not been established. There have been fatal device-related adverse events reported in this population.

[and]

[C]entral venous lines may cause the filters to move or fracture.

164.    On April 19, 2005, prior to formally responding to the FDA's request to add a black box warning, BPV CEO Timothy Ring and C.R. Bard CEO John Weiland received an executive summary reporting that there were at least 34 migrations and 51 fractures associated with Bard IVC Filters.

165.    This same report advised Bard executives that there were then nine deaths, six of which related to morbidly obese patients. Further, 18 of the 51 fractures resulted in fragments migrating to the heart.

166.    On April 20, 2005, without alerting the FDA to the alarming information Bard executives had the day before, Bard submitted a letter in response to the FDA's request to add this black box warning stating that, "There is currently a statement in the IFU linking all of our complications to death."

167.    On August 29, 2005, the FDA cleared the G2® filter for the same intended uses as the Recovery® filter, except that it was not cleared for retrievable use.[1]  Contrary to the FDA's suggestion, no black box warning was added to warn the bariatric patient population of fatalities associated with the use of the filter.[2]

168.    In September of 2005, Bard quietly and belatedly replaced the Recovery® filter on hospital shelves with the G2® filter. Bard either told doctors or led them to believe that the G2® was a new and improved version of the Recovery® filter with the same option to retrieve the filter after implant.

169.    At the same time Bard was selling the G2® (then a permanent use filter without any retrievability option), Bard was also selling the SNF, which had the same indication for use with nearly zero adverse events.

170.    Bard marketed the G2® filter as having "enhanced fracture resistance," "improved centering," and "increased migration resistance" without any data to back up these representations. Even if such data existed, Bard witnesses have testified that Bard would not share any such information with doctors if requested.

---

[1] The FDA did not clear the G2® filter to be used as a retrievable filter until January 15, 2008.
[2] A warning was eventually added to the IFU in October of 2009.

53

171.    Moreover, as with its predecessor Recovery® filter, Bard failed to conduct adequate clinical and bench testing to ensure that the G2® filter would perform safely and effectively once implanted in the human body.

172.    The G2® filter's design causes it to be of insufficient integrity and strength to withstand normal stresses within the human body so as to resist fracturing, migrating, and/or tilting, and/or perforating the inferior vena cava.

173.    In addition to the same design defects as its predecessor device, the G2® filter suffers from the same manufacturing defects. These manufacturing defects include, but are not limited to, the existence of "draw markings" and circumferential grinding markings on the exterior of the surface of Bard IVC Filters. The presence of these draw markings and/or circumferential grinding markings further compromises the structural integrity of the G2® filter while *in vivo*.

174.    In particular, the G2® filter is prone to fail at or near the location of draw markings/circumferential grinding markings on the struts of the IVC Filters.

175.    Put simply, the G2® filter is not of sufficient strength to withstand normal placement within the human body. The presence of the aforementioned exterior manufacturing defects makes Bard IVC Filters more susceptible to fatigue, failure, and migration.

176.    Similarly, although Bard rounded the chamfer at the edge of the cap of the G2® filter, it continued to fracture at that same location.

177.    Thus, the G2® filter shares similar defects and health risks as the Recovery® filter.

178.    Almost immediately upon the release of the G2® filter, Bard received notice of the same series of adverse events of migration, fracture, tilt, and perforation causing the same type of harm as the Recovery® filter. This time, however, a new and different adverse event emerged:

Electronically Filed - City of St. Louis - May 09, 2016 - 04:45 PM

the G2® filter would caudally (moving against blood flow) migrate in the direction toward the groin.

179. The G2® filter failures were again associated with reports of severe patient injuries such as:

   a. Death;

   b. Hemorrhage;

   c. Cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart);

   d. Cardiac arrhythmia and other symptoms similar to myocardial infarction;

   e. Severe and persistent pain; and

   f. Perforations of tissue, vessels and organs.

180. Bard represents the fracture rate of the G2® filter to be 1.2%. Based upon a review of the data available in the public domain (including the FDA MAUDE database statistics and the published medical literature), this representation does not accurately reflect the true frequency of fractures for the G2® filter.

181. As with the Recovery® filter, Bard was aware of clinical data showing that the G2® filter was not the substantial equivalent of its predecessor SNF device, requiring immediate recall of the adulterated and misbranded product.

182. A review of the MAUDE database from the years 2004 through 2008 demonstrates that the Bard IVC Filters (including the G2® Filter) are responsible for the majority of all reported adverse events related to IVC filters.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

183.    On December 27, 2005, Bard's Medical Affairs Director sent an e-mail questioning why Bard was even selling the modified version of the Recovery® filter, when Bard's SNF had virtually no complaints associated with it.

184.    This further confirms the misbranded and adulterated nature of the device, requiring corrective action, including recall.

185.    On January 15, 2008, the FDA allowed a retrievable option for the G2® filter, the G2 Express® filter. The G2 Express® filter (also known as the "G2®X") is identical in design to the G2® filter except that it has a hook at the top of the filters that allows it to be retrieved by snares, as well as Bard's Recovery Cone.

186.    The G2®X filter contained no design modifications or improvements to alleviate the instability, structural integrity, and perforation problems that Bard knew to exist with the G2®X Filter via the 510(k) process.

## THE ECLIPSE® FILTER

187.    In a failed effort to resolve the complications associated with its previous filters, Bard designed the Eclipse® Vena Cava Filter as the next generation in its retrievable IVC filter family.

188.    The Eclipse® filter was cleared by the FDA on January 14, 2010. The only design changes from the G2® family of filters to the Eclipse® filter was that the Eclipse® filter was electropolished.

189.    According to Bard's internal testing, electropolishing supposedly increased fracture resistance by 25%. However, longitudinal studies published in peer-reviewed medical literature found that among 363 patients implanted with the Recovery® filter and 658 patients implanted with the G2® filter, the devices experienced fracture rates of 40% and 37.5%, respectively, after

five and a half years. Thus, approximately 28.125% to 30% of Eclipse® filters would still be projected to fracture within five and a half years.

190.    Without meaningful design changes, the Eclipse® filter continued to share several of the same design defects and complications associated with the Recovery® filter and G2® family of filters.

191.    Soon after Bard launched the Eclipse® filter, it began receiving complaints and reports of injuries associated with the Eclipse® filter similar to those received with its predecessor filters.

192.    Bard, however, knew and/or soon learned that the Eclipse® filter was not the substantial equivalent of the SNF, making this device also misbranded and adulterated, and subject to recall.

## THE MERIDIAN® FILTER

193.    The Meridian® filter was cleared by the FDA in August of 2011.

194.    Bard represented to the FDA that the Meridian was substantially similar to the Eclipse® filter and could therefore be cleared via the less onerous 510(k) process.

195.    Bard, however, knew and/or soon learned that the Meridian® filter was not the substantial equivalent of the SNF, making this device also misbranded and adulterated, and subject to recall.

196.    The Meridian® filter system was the next-generation of Bard's retrievable or optional filters. The Meridian® filter is made of the same nickel-titanium alloy, NITINOL, as the Bard Recovery®, G2®, and Eclipse® filters.

197.    The design of the Meridian is based on the Eclipse® filter, which, in turn, is based entirely on the G2® filter, which, in turn is based on the Recovery® Filter. Like the Eclipse®, the

57

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

wires used in the Meridian® filter are electropolished prior to the forming of the filter. The only added feature to the Meridian® filter was a caudal anchoring system added in an attempt to reduce the prevalence of the filter caudal migrating toward the groin.

198. However, as seen with the Recovery®, G2®, and Eclipse® filters, soon after its introduction to the market reports surfaced that the Meridian® filters were fracturing, perforating, migrating, and/or tilting in the patients in which they were implanted.

199. The Meridian® filter was also plagued with the same manufacturing and design defects that were causing damage to the general public as Bard's predecessor retrievable filters.

### THE DENALI® FILTER

200. The Denali® filter was cleared by the FDA on May 15, 2013. It is Bard's latest generation device in the IVC filter product line.

201. Bard represented to the FDA that the Denali® was substantially similar to the Eclipse® filter, again bypassing formal pre-market FDA approval and instead utilizing the 510(k) process.

202. The Denali® Filter is also made of NITINOL. Its design is based on the Eclipse® filter, which in turn, was based on Bard's predecessor filter line. Like the Eclipse®, the NITINOL wires used in the Denali® filter are electropolished prior to the forming of the filter. The added features to the Denali® Filter were cranial and caudal anchoring systems (to reduce the prevalence of the filter migration) and penetration limiters.

203. However, as seen with the Recovery®, G2®, G2X® (G2 Express®), Eclipse® and Meridian® Filters, soon after its introduction to the market, reports were made that the Denali® filters were fracturing, perforating, migrating, and/or tilting in the patients in which they were implanted.

58

Electronically Filed - City of St. Louis - May 05, 2016 - 04:15 PM

204. The Denali® filter was likewise plagued with the same manufacturing and design defects that were causing damage to the general public in Bard's predecessor retrievable filter family.

205. At all times material hereto from the design phase, testing, and manufacture of the Recovery® filter through the Denali® filter, Bard lacked a thorough understanding dynamics of caval anatomy that impacted testing methods.

206. At this time, all Bard IVC Filters contain the same or substantially similar defects resulting in the same or substantially similar mechanism of injury to Plaintiff.

207. At this time, all Bard IVC Filters are misbranded and adulterated by virtue of them failing to be the substantial equivalent of their predecessor devices, all of which were required to be as safe and effective as the original predicate device, the Simon Nitinol Filter, and none were/are, making them subject to corrective action, including recall, in the interest of patient safety. The use of each of these subject devices was inappropriate and illegal since each was being marketed while adulterated and misbranded for failing, among other things, to be as safe and effective as the originating predicate device, SNF.

208. At all relevant times, safer and more efficacious designs existed for this product, as well as reasonable treatment alternatives.

## COUNT I
## NEGLIGENCE

209. Plaintiffs repeat and re-allege each and every allegation in this Petition and incorporate each allegation into this Count, as if set forth at length, in its entirety.

210. At all times relevant to this cause of action, the Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including Bard IVC Filters.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

211. At all times relevant hereto, the Defendants were under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to the Plaintiffs and to those people receiving Bard IVC Filters.

212. At the time of manufacture and sale of Bard IVC Filters, the Defendants knew or reasonably should have known Bard IVC Filters:

    a.    Were designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

    b.    Were designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device;

    c.    Were designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/or,

    d.    Were designed and manufactured so as to present an unreasonable risk of perforation and damage to the vena cava wall.

213. Despite the aforementioned duty on the part of the Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in:

    a.    Unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with Bard IVC Filters, specifically its incidents fracture, migration, perforation and other failure;

    b.    Unreasonably and carelessly manufactured a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

    c.    Unreasonably and carelessly designed a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body; and

    d.    Unreasonably and carelessly designed a product that presented a risk of harm to the Plaintiffs and others similarly situated in that it was prone to fail.

214. As a direct and proximate result of the Defendants' negligence, as described herein, Plaintiffs have suffered and will continue to suffer serious physical injuries, pain and suffering,

60

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

WHEREFORE, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

## COUNT II
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

215. Plaintiffs repeat and re-allege each and every allegation in this Petition and incorporate each allegation into this Count, as if set forth at length, in its entirety.

216. Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC. designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold Bard IVC Filters, including those implanted into Plaintiffs, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

217. At the time Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use. Specifically, Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the Bard IVC Filters, which were implanted in Plaintiffs, that the filters posed a significant risk of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

218. Therefore, Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

Defendants further had a duty to warn of dangers and proper safety instructions that it became aware of even after the devices were distributed and implanted in Plaintiffs.

219.    Despite this duty, Defendants failed to adequately warn of material facts regarding the safety and efficacy of Bard IVC Filters, and further failed to adequately provide instructions on the safe and proper use of the device.

220.    No health care provider, including Plaintiffs', or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

221.    The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

222.    Plaintiffs and Plaintiffs' health care providers used the devices in normal, customary, intended, and foreseeable manners, namely as a surgically implanted device used to prevent pulmonary embolisms.

223.    Therefore, the Bard IVC Filters implanted in Plaintiffs were defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

224.    The Bard IVC Filters implanted in Plaintiffs were in the same condition as when it they were manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

225.    As a direct and proximate result of Defendants' lack of sufficient warning and/or instructions, Plaintiffs have suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

WHEREFORE, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

**COUNT III**
**STRICT PRODUCTS LIABILITY-DESIGN DEFECT**

226. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

227. At all times relevant to this action, Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC. developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce Bard IVC Filters, including those implanted in Plaintiffs.

228. The Bard IVC Filters were expected to, and did, reach their intended consumers without substantial change in the condition in which they were in when they left Defendants' possession. In the alternative, any changes that were made to the Bard IVC Filters implanted in Plaintiffs were reasonably foreseeable to Defendants.

229. The Bard IVC Filters implanted in Plaintiffs were defective in design because they failed to perform as safely as persons who ordinarily use the product would have expected at the time of use.

230. The Bard IVC Filters implanted in Plaintiffs were defective in design, in that each product's risks of harm exceeded its claimed benefits.

231. The Defendants knew that safer alternative designs were available and would have prevented or significantly reduced the risk of the injury presented by the Bard IVC Filter and it was economically and technologically feasible at the time the filter left the control of the

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

Defendants to prevent or reduce the risk of such a such a dangerous event by application of existing, reasonably achievable, scientific knowledge.

232. Plaintiffs and Plaintiffs' health care providers used the Bard IVC Filter in a manner that was reasonably foreseeable to Defendants.

233. Neither Plaintiffs, nor Plaintiffs' health care providers could have by the exercise of reasonable care discovered the devices defective condition or perceived its unreasonable dangers prior to Plaintiffs' implantation with the devices.

234. As a direct and proximate result of the Bard IVC Filter's defective design, Plaintiffs have suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

235. At all times relevant hereto, Bard IVC Filters were dangerous and presented a substantial danger to patients who were implanted with the Bard IVC Filters and these risks and dangers were known or knowable at the times of distribution and implantation in Plaintiffs. Ordinary consumers would not have recognized the potential risks and dangers the Bard IVC Filters posed to patients, because its use was specifically promoted to improve health of such patients. The Bard IVC Filters were used by the Plaintiffs and their treating physicians in a reasonably foreseeable manner.

236. The Defendants failed to provide warnings of such risks and dangers to the Plaintiffs and their medical providers as described herein.

237. As a direct and proximate result of the Bard IVC Filter's defects, as described herein, Plaintiffs have suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

WHEREFORE, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

## COUNT IV
## STRICT PRODUCTS LIABILITY-MANUFACTURING DEFECT

238. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

239. Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC. designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Bard IVC Filters that were implanted into Plaintiffs.

240. The Bard IVC Filters implanted in Plaintiffs contained a condition, which Defendants did not intend, at the time they left Defendants' control and possession.

241. Plaintiffs and Plaintiffs' health care providers used the devices in a manner that was reasonably foreseeable to Defendants.

242. As a result of this condition, the product injured Plaintiffs and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

243. As a direct and proximate result of the Bard IVC Filters' manufacturing defect, Plaintiffs have suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

WHEREFORE, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

## COUNT V
## BREACH OF EXPRESS AND IMPLIED WARRANTY

244. Plaintiffs repeat and re-allege each and every allegation in this Petition and incorporate each allegation into this Count, as if set forth at length, in its entirety.

245. Plaintiffs, through their medical providers, purchased the Bard IVC Filters from Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC.

246. At all times to this cause of action, the Defendants were merchants of goods of the kind including medical devices and vena cava filters (like the Bard IVC Filters).

247. At the time and place of sale, distribution and supply of the Bard IVC Filters to Plaintiffs, the Defendants expressly represented and warranted that the Bard IVC Filters were safe, and impliedly warranted that the products were reasonably fit for their intended purpose and were marketable quality.

248. At the time of Plaintiffs' purchase from Defendants, the Bard IVC Filters were not in a merchantable condition, in that:

    a.    They were designed in such a manner so as to be prone to a unreasonably high incident of fracture, perforation of vessels and organs, and/or migration;

    b.    They were designed in such a manner so as to result in a unreasonably high incident of injury to the organs including the vena cava of its purchaser; and

    c.    They were manufactured in such a manner so that the exterior surface of the Bard IVC Filters were inadequately, improperly and inappropriately designed causing the device to weaken and fail.

249. Additionally, implied warranties were beached as follows:

    a.    The Defendants failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the Bard IVC Filters would cause harm;

b.   The Defendants manufactured and/or sold the Bard IVC Filters and those filters did not conform to representations made by the Defendants when it left the Defendants' control;

c.   The Defendants manufactured and/or sold the Bard IVC Filters that were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the Bard IVC Filters' design or formulation exceeded the benefits associated with that design. These defects existed at the time the products left the Defendants' control; and

d.   The Defendants manufactured and/or sold the Bard IVC Filters when they deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical units manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the products left the Defendants' control.

250.   Further, Defendants' marketing of the Bard IVC Filters was false and/or misleading.

251.   Plaintiffs, through their attending physicians, relied on these representations in determining which IVC filter to use for implantation in the Plaintiffs.

252.   Defendants' filters were unfit and unsafe for use by users as it posed an unreasonable and extreme risk of injury to persons using said products, and accordingly Defendants breached their expressed warranties and the implied warranties associated with the products.

253.   The foregoing warranty breaches were a substantial factor in causing Plaintiffs' injuries and damages as alleged.

254.   As a direct and proximate result of the Bard IVC Filters' defects, as described herein, Plaintiffs have suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

Electronically Filed - City of St. Louis - May 09, 2016 - 04:15 PM

WHEREFORE, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

255. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

256. At all times relevant to this cause, and as detailed supra, Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC. negligently provided Plaintiffs, Plaintiffs' health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning Bard IVC Filters, including, but not limited to, misrepresentations relating to the following subject areas:

     a.    The safety of the Bard IVC Filters;

     b.    The efficacy of the Bard IVC Filters;

     c.    The rate of failure of the Bard IVC Filters; and

     d.    The approved uses of the Bard IVC Filters.

257. The information distributed by Defendants to the public, the medical community and Plaintiffs' health care providers was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of Bard IVC Filters. Defendants made the foregoing misrepresentations knowing that they were false or without reasonable basis. These materials included instructions for use and warning documents that were included in the packages of the Bard IVC Filters that were implanted in Plaintiffs.

258. Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiffs' health care providers; to gain the confidence of the public and the medical community, including Plaintiffs' health care providers; to falsely assure them of the quality of Bard IVC Filters and its fitness for use; and to induce the public and the medical community, including Plaintiffs' healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use the Bard IVC Filters.

259. The foregoing representations and omissions by Defendants were in fact false. The Bard IVC Filters is not safe, fit, and effective for human use in its intended and reasonably foreseeable manner. The use of Bard IVC Filters is hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiffs suffered.

260. In reliance upon the false and negligent misrepresentations and omissions made by Defendants, Plaintiffs and Plaintiffs' health care providers were induced to, and did use Bard IVC Filters, thereby causing Plaintiffs to sustain severe and permanent personal injuries.

261. Defendants knew and had reason to know that Plaintiffs, Plaintiffs' health care providers, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by Defendants, and would not have prescribed and implanted same, if the true facts regarding the device had not been concealed and misrepresented by Defendants.

262. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Bard IVC Filters.

263. At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiffs used Bard IVC Filters, Plaintiffs and Plaintiffs' health care providers were unaware of said Defendants' negligent misrepresentations and omissions.

264. Plaintiffs, Plaintiffs' health care providers and the general medical community reasonably relied upon misrepresentations and omissions made by Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Bard IVC Filters.

265. As a direct and proximate result of the Plaintiffs and Plaintiffs' health care providers' reliance on the foregoing misrepresentations and omissions by Defendants, as described herein, Plaintiffs have suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**WHEREFORE**, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

## COUNT VII
## FRAUD

266. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

267. Prior to Plaintiffs' use of Bard IVC Filter and during the period in which Plaintiffs actually used the Bard IVC Filters, Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC. fraudulently suppressed material information regarding the safety and efficacy of Bard IVC Filters, including information regarding increased adverse events, pre and post marketing deaths, and the high number of severe adverse event reports compared to other IVC

filters and the need for monitoring for the safe and effective use of the Bard IVC Filters. Furthermore, Defendants fraudulently concealed the safety information about the use of the Bard IVC Filters. As described above, Bard IVC Filters have several well-known serious side-effects that are not seen in other IVC filters. Plaintiffs believe that the fraudulent misrepresentation described herein was intentional to keep the sales volume of Bard IVC Filters strong.

268.    The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiffs, the FDA, and the public in general, that said product, the Bard IVC Filters, had been tested and was found to be safe and/or effective to reduce the risk of clotting injury.

269.    These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiffs, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, implant and/or purchase said product, Bard IVC Filters, for use to reduce the risk of clotting injury, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

270.    At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs used the Bard IVC Filters, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

271.    In reliance upon said representations, Plaintiffs were induced to and did use Bard IVC Filters, thereby sustaining severe and permanent personal injuries.

71

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM

272. Said Defendants knew and were aware, or should have been aware, that the Bard IVC Filters had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

273. Defendants knew or should have known that Bard IVC Filters had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

274. Defendants brought Bard IVC Filters to the market, and acted fraudulently, wantonly and maliciously to the detriment of Plaintiffs.

275. Defendants fraudulently concealed the safety issues associated with the Bard IVC Filters including the need for monitoring in order to induce physicians to prescribe and implant Bard IVC Filters and for patients, including Plaintiffs, to purchase and/or use the Bard IVC Filters.

276. At the time Defendants concealed the fact that the Bard IVC Filters was not safe, Defendants were under a duty to communicate this information to Plaintiffs, physicians, the FDA, the healthcare community, and the general public in such a manner that they could appreciate the risks associated with using the Bard IVC Filters.

277. Defendants, at all times relevant hereto, withheld information from the FDA which they were required to report.

278. Plaintiffs and the Plaintiffs' prescribing physicians relied upon the Defendants' outrageous untruths regarding the safety of the Bard IVC Filters.

279. Plaintiffs' prescribing and implanting physicians were not provided with the necessary information by the Defendants, to provide an adequate warning to the Plaintiffs.

280.    Bard IVC Filters were improperly marketed to the Plaintiffs and their prescribing and implanting physicians as the Defendants did not provide proper instructions about how to use the medical device and did not adequately warn about the Bard IVC Filters' risks.

281.    As a direct and proximate result of Defendants' malicious and intentional concealment of material life-altering information from Plaintiffs and Plaintiffs' prescribing physicians, Defendants caused or contributed to Plaintiffs' injuries (and in some cases death).

282.    It is unconscionable and outrageous that Defendants would risk the lives of consumers, including Plaintiffs. Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public about the dangers associated with the use of the Bard IVC Filters. Defendants' outrageous conduct rises to the level necessary that Plaintiffs should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

283.    Defendants' fraud also acted to conceal their malfeasance which actions tolled Plaintiffs' statute of limitations because only Defendants knew the true dangers associated with the use of Bard IVC Filters as described herein. Defendants did not disclose this information to the Plaintiffs, their prescribing and implanting physicians, the healthcare community and the general public. Without full knowledge of the dangers of the Bard IVC Filters, Plaintiffs could not evaluate whether a person who was injured by the Bard IVC Filters had a valid claim.

284.    Defendants widely advertised and promoted Bard IVC Filters as a safe and effective medical device and/or as a safe and effective means of reducing the risk of clotting injury.

285.    Defendants' advertisements and promotion regarding the Bard IVC Filters falsely and misleadingly stated that monitoring was not necessary for safe and effective use of the product,

misrepresentations Defendants knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiffs, to purchase and use such product. Plaintiffs relied on these material misrepresentations when deciding to purchase and use Bard IVC Filters.

286. Defendants had a duty to disclose material information about serious side-effects to consumers such as Plaintiffs.

287. Additionally, by virtue of Defendants' partial disclosures about the medical device, in which Defendants touted the Bard IVC Filters as a safe and effective medical device, Defendants had a duty to disclose all facts about the risks associated with use of the medical device, including the risks described in this Petition. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Plaintiffs, to purchase Defendants' dangerous product.

288. Had Plaintiffs been aware of the hazards associated with the Bard IVC Filters, Plaintiffs would have employed appropriate monitoring, used a different IVC filter with a better safety profile, or not have used the product that led proximately to Plaintiffs' injuries (including in some cases death).

289. Upon information and belief, Plaintiffs aver that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with Bard IVC Filters, for the purpose of preventing consumers, such as Plaintiffs, from discovering these hazards.

**WHEREFORE**, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

## COUNT VIII
## MEDICAL MONITORING

290.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

291.   In certain cases, medical monitoring is required to evaluate whether a Bard IVC Filter (or portions of the Bard IVC Filter) has fractured, tilted and/or migrated (collectively referred to herein as "device failure" or "failure"). In order to determine whether failure of the Bard IVC Filter has occurred, imaging studies must be performed. Typically, these imaging studies will include un-enhanced computed tomography scan (CT Scan) so that the filter may be visualized. CT Scan imaging produces an image of the filter and is able to reveal whether the filter has fractured or migrated.

292.   Patients requiring medical monitoring are recommended to undergo regular and frequent imaging studies of the device or portions of the device at least once or twice annually. As long as the device, or portions of the device, remains within the body of the patient, the potential for future device failure exists. Consequently, these patients require regular and frequent medical monitoring for the duration of time the device, or portions of the device, remain within their bodies.

293.   Patients eligible for medical monitoring for the Bard IVC Filter or portions of the device need not have experienced past failure of the Bard IVC Filter. For example, patients who have undergone implant of the Bard IVC Filter frequently learn that the Bard IVC Filter cannot be removed due to the fact that it has "grown into" tissue, but, the fracture, tilt or migration of the device may not yet have occurred. As a result of the inability to remove the Bard IVC Filter, the device must remain permanently implanted in the patient, for the patient's lifetime. Although these patients may not yet have experienced device failure, they are at risk for future device failure and require regular and frequent monitoring to evaluate the integrity of the Bard IVC Filter. In

75

addition to the aforementioned imaging studies, endovascular intervention (typically cardiac catheterization) may also be used by medical professionals to diagnose or discover whether fractured portions of the Bard IVC Filter System have migrated to the heart or lungs. Furthermore, endovascular surgery may assess the nature and extent of the damage resulting from failure of the Bard IVC Filter.

294. In those instances where device fracture has occurred, and depending on the circumstances particular to the patient, a person may be required to undergo one or all of the following medical procedures:

a.   CT Scanning or other imaging studies;

b.   Cardiac Catheterization;

c.   Open heart surgery;

d.   Removal of the Bard IVC Filter from the vena cava.

295. The Bard IVC Filter was placed in Plaintiffs' bodies. Plaintiffs have incurred medical expenses and has endured physical pain and suffering, mental anguish, loss of enjoyment of life, and other losses, some of which are permanent in nature. As a result of the failure of the Bard IVC Filter, Plaintiffs have become impaired and will remain so in the future. The defective Bard IVC Filters remain in Plaintiffs' bodies. Plaintiffs are required to attend regular physicians' visits and to undergo imaging studies.

296. As a direct and proximate result of the conduct and defective product of the Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., as alleged in this Petition, Plaintiffs has incurred medical expenses, and will continue to incur substantial medical expenses into the future.

76

297.    As a direct and proximate result of the conduct and defective product of the Defendants, as alleged in this Petition, medical monitoring is necessary for Plaintiffs. Medical monitoring includes.

      a.    Regularly scheduled CT scans or other appropriate imaging studies; and/or

      b.    Potential cardiac catheterization or other endovascular procedure to detect the presence of migrated pieces of the Bard IVC Filter System; and/or Physicians' visits and examinations.

**WHEREFORE**, the Plaintiffs pray for judgment against Defendants, each of them, in an amount in excess of $25,000.00, for costs expended herein, and for such further and other relief as the Court deems just and proper.

## COUNT X
## PUNITIVE DAMAGES

298.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

299.    The acts, conduct, and omissions of Defendants C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., as alleged throughout this Petition were willful and malicious. Defendants committed these acts with a conscious disregard for the rights, health and safety of Plaintiffs and other Bard IVC Filter users and for the primary purpose of increasing Defendants' profits from the sale and distribution of the Bard IVC Filters. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

300.    Prior to the manufacturing, sale, and distribution of Bard IVC Filters, Defendants knew that said products were in a defective condition as previously described herein and knew that those who were prescribed and implanted with the medical device would experience and did

77

and BARD PERIPHERAL VASCULAR, INC. on each of the above-referenced claims and

Causes of Action and as follows:

1.  Awarding compensatory damages in excess of $25,000.00, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.  Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

3.  Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

4.  Prejudgment interest;

5.  Postjudgment interest;

6.  Awarding Plaintiffs reasonable attorneys' fees when applicable;

7.  Awarding Plaintiffs the costs of these proceedings; and

8.  Such other and further relief as this Court deems just and proper.

Respectfully submitted,

NIEMEYER, GREBEL & KRUSE, LLC

By:     /s/ Mark R. Niemeyer
        Mark R. Niemeyer      #42437
        David L. Grebel       #52683
        Michael S. Kruse      #57818
        10 S. Broadway, Suite 1125
        St. Louis, MO 63102
        314-241-1919 phone
        314-665-3017 fax
        niemeyer@ngklawfirm.com
        grebel@ngklawfirm.com
        kruse@ngklawfirm.com

and

79

Ramon Rossi Lopez (for *pro hac vice* consideration)
Matthew R. Lopez (for *pro hac vice* consideration)
Amorina P. Lopez (for *pro hac vice* consideration)
**Lopez McHugh LLP**
100 Bayview Circle, Suite 5600
Newport Beach, CA 82660
949-737-1501 phone
949-737-1504 fax
rlopez@lopezmchugh.com
mlopez@lopezmchugh.com
alopez@lopezmchugh.com

*Attorneys for the Plaintiffs*

Electronically Filed - City of St. Louis - May 06, 2016 - 04:15 PM